UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ASHVIN SHENOY, | ) | |
| | ) | 2:06-CV-00924-RCJ-(GWF) |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| JOHN A. McDONALD, GRANT MILLER, DAVID FIORE, M.D., CHERYL HUG-ENGLISH, CHRISTINE CREMO, PhD, JOHN LILLY, M.D., DANIEL KLAICH, | ) ) ) ) ) ) | |
| *Defendants*. | ) | |

This matter comes before the Court on Plaintiff's Emergency Motion to Extend Preliminary Injunction (# 27) filed September 26, 2006. The Court has considered the Motion, the pleadings on file, and oral arguments on behalf of the parties. IT IS HEREBY ORDERED that Plaintiff's Emergency Motion to Extend Preliminary Injunction (# 27) is *denied*.

**BACKGROUND**

On August 18, 2006, this Court granted Ashvin Shenoy's ("Plaintiff") Emergency Motion for Preliminary Injunction (# 2) filed July 28, 2006. In his Motion for Preliminary

Injunction (# 2), Plaintiff asked the Court to enjoin the University of Nevada School of Medicine ("UNSOM") from enforcing an order imposing upon Plaintiff a one-year suspension for allegedly cheating on two examinations. Plaintiff alleged that UNSOM violated his right to procedural and substantive due process when deciding to suspend Plaintiff, and that he would suffer irreparable harm if the Court were to allow the suspension order to stand.

After considering Plaintiff's Motion, the pleadings on file, and oral argument, this Court granted Plaintiff's Emergency Motion for Preliminary Injunction (# 2) until September 30, 2006. The Court held that although Plaintiff's arguments concerning irreparable harm were "somewhat weak, at this early point in the litigation, the Court finds that a combination of Shenoy's probable success on the merits of his procedural due process claim and the possibility of irreparable harm merit a reasonable period of injunctive relief." (# 16, 10.)

With regards to Plaintiff's substantive due process claim, this Court stated, "there is no evidence to suggest that the university's ultimate decision was in any way arbitrary or capricious, or in violation of Plaintiff's substantive due process rights." (# 16, 4.) Thus, the Court held that UNSOM did not violate Plaintiff's substantive due process rights. However, this Court stated, "[i]n spite of the procedures that were afforded Shenoy by UNSOM, in order to avoid an unfair or mistaken exclusion from the educational process, the Court finds that Shenoy should be afforded a more thorough opportunity to present his side." (# 16, 8.) This Court therefore ordered UNSOM to hold the rehearing in accordance with the following procedures:

> Written notice of the potential action to be taken against Plaintiff at least ten days in advance of the hearing.

> Such notice must contain, at a minimum, a brief summary of any evidence to be presented against Plaintiff before the Student Development Committee ("SDC") or Dean.
>
> Plaintiff must have access to witness testimony or other testimony relied on by the SDC or Dean.
>
> Plaintiff must have the students' names who accused him of cheating if the SDC relies upon, or hears evidence concerning, such accusations.
>
> Plaintiff must be given the opportunity to examine the student accusers if the SDC or Dean relies upon their testimony.
>
> Plaintiff must be given the opportunity to testify on his own behalf before the SDC.
>
> Plaintiff must be offered the opportunity to examine the statistical analysis and scantron results of other students in the classes, and must be given the opportunity to offer counter statistical evidence or explanation regarding the statistical evidence in question.

On August 30, 2006, UNSOM gave Plaintiff notice that the SDC would hold a rehearing on September 21, 2006, to decide if Plaintiff should be suspended. On September 22, 2006, one day after the rehearing, the SDC recommended to suspend Plaintiff for one year. The Dean upheld that recommendation and suspended Plaintiff for one year, effective October 1, 2006.

Plaintiff now argues the rehearing was fundamentally flawed and violated both his substantive and procedural due process rights. Plaintiff asks the Court to extend the preliminary injunction "until the truth can be fully and fairly ascertained through a trial on the merits." (# 27, 12.) Plaintiff further argues he "should be permitted to remain enrolled and to fully participate as a second-year medical student pending trial." (# 27, 12.)

**DISCUSSION**

Plaintiff raises three principal arguments in his Emergency Motion to Extend Preliminary Injunction. (# 27.) First, Plaintiff claims the SDC violated his substantive due process rights because its recommendation was arbitrary and lacked a rational factual basis. Second, Plaintiff argues the rehearing lacked procedural due process. Finally, Plaintiff argues the "balance of hardships" favor extending the preliminary injunction.

**I.      Balance of Hardships/Extending Injunctive Relief**

The purpose behind this Court's prior order (# 16) granting Plaintiff's request for a preliminary injunction was to ensure that UNSOM afforded Plaintiff sufficient process. To this end, the Court ordered UNSOM to follow specific procedures and principles in its rehearing. (# 16.) If UNSOM failed to follow the Court's Order, or otherwise deprived Plaintiff from his constitutional due process rights, then extending the injunction would be appropriate. However, if UNSOM complied with the Court's Order and afforded Plaintiff sufficient process, then the Court must deny the Emergency Motion to Extend Preliminary Injunction. (# 27.) Thus, the emergency hearing's outcome rests on the due process analysis. In addition, the Court does not reach the merits of Plaintiff's case in this Order, but instead focuses on whether Plaintiff received sufficient due process. *See, e.g., Nash v. Univ. of Auburn*, 621 F. Supp. 948, 958 (M.D. Ala. 1985) (stating that "it is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion" and that a district court's only role is to determine if the decision to suspend violated due process).

## II. Substantive Due Process

"To establish a violation of substantive due process, a student must demonstrate arbitrary and capricious conduct on the part of university officials by showing that there was no rational basis for the university's decision . . . ." *See Roach v. Univ. of Utah*, 968 F. Supp. 1446, 1455 (D. Ut. 1997). Other courts have stated that to violate substantive due process, the school's actions must "shock the conscience." *See, e.g., Flaim v. Medical College of Ohio*, 418 F.3d 629, 643 (6th Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)). This Court has already ruled that UNSOM's actions in the first hearing did not violate Plaintiff's substantive due process rights. (# 16.) Thus, Plaintiff must somehow show that in the rehearing, the SDC's actions, in spite of the added safeguards, somehow "shock the conscience."

To demonstrate arbitrary and capricious conduct, Plaintiff focuses on Dr. Klein's (Plaintiff's statistician) statistical analysis. (# 27, 8-10.) Plaintiff argues that because Dr. Klein has more experience than UNSOM's analyst, no rational person could decide Dr. Klein's analysis was incorrect. (# 27, 8-10.) Specifically, Plaintiff argues, "[c]onsidering the credible, well-founded and unchallenged evidence presented by Dr. Klein, as contrasted with the unexplained and substantially challenged evidence presented by UNSOM," no factual basis exists to support the proposition that Plaintiff cheated. This argument focuses on evidentiary matters and Plaintiff's case, and the Court will not retry the hearing and substitute its judgment for that of the school board. *See Nash*, 621 F. Supp. at 958. The fact a person may believe a witness with less experience over one with more does not "shock the conscience." UNSOM's statistician presented evidence that the probability that Plaintiff's and

Livingston's exams could have the identical wrong answers was 6/10,000,000. The fact the SDC believed UNSOM's witness over Plaintiff's is not arbitrary or capricious, and it certainly does not "shock the conscience" because a rational decision-maker could have reached the same conclusion.

Plaintiff also argues that because "of the near physical impossibility for Ashvin Shenoy to have observed or copied on at least one of the two tests at issue," no rational factual basis exists upon which to conclude Plaintiff cheated. (# 27, 9-10.) Despite Plaintiff's contention, Livingston testified he made no effort to cover his exams. Further, as justification for having the identical answers, Plaintiff stated he and Livingston studied together. When Livingston denied having ever studied with Plaintiff, Plaintiff recanted and said that although he never did actually study with Livingston, he obtained Livingston's notes. This Court cannot say that it was "physically impossible" for Plaintiff to cheat. The SDC's determination that it was not physically impossible was not arbitrary and capricious; thus, a rational fact finder could have decided Plaintiff cheated.

Plaintiff's substantive due process arguments do not demonstrate an arbitrary and capricious decision that shocks the conscience. Rather, Plaintiff's arguments focus more on the merits. Because a rational decision-maker could have decided Plaintiff cheated, this Court holds that UNSOM's decision to suspend Plaintiff did not violate Plaintiff's substantive due process rights.

**III.     Procedural Due Process**

Plaintiff also argues that the decision to suspend him for one year violates his procedural due process rights. This Court previously decided that UNSOM's hearing did in

fact violate Plaintiff's due process. (# 16.) In its Order, this Court ordered UNSOM to follow certain procedures and guidelines to ensure sufficient procedural safeguards. As outlined below, the Court finds that UNSOM followed such principles in conducting its rehearing and thus did not violate Plaintiff's procedural due process rights.

### A.     Standard

UNSOM does not dispute that Plaintiff has both a property and a liberty interest, which his suspension adversely affects. Consequently, UNSOM properly concludes that their actions must have afforded Plaintiff the minimal due process requirements. *See Goss v. Lopez*, 419 U.S. 565, 574 (1975); *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). Because due process applies, the more difficult question is what process was due. *Goss*, 419 U.S. at 577. Further, "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961).

### 1.     Student Suspensions

In the context of student suspensions, the Supreme Court has said "[j]udicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. . . . By and large, public education in our Nation is committed to the control of state and local authorities." *Goss*, 419 U.S. at 577. The Supreme Court has emphasized that "[a] school is an academic institution, not a courtroom or administrative hearing room." *Board of Curators v. Horowitz*, 435 U.S. 78, 88 (1978). Although "a university cannot ignore its duty to treat its students fairly, neither is it required to transform its classrooms into courtrooms." *Jaksa v. Regents of Univ. of Michigan*, 597 F. Supp. 1245,

1250 (E.D. Mich. 1984) (citing *Jenkins v. Louisiana State Board of Education*, 506 F.2d 992, 1000 (5th Cir. 1975)). Furthermore, procedural due process in school disciplinary proceedings does not require the same procedural safeguards as a criminal trial because "formalizing hearing requirements would divert both resources and attention from the educational process." *Id.* at 1250. What procedural due process does require is, at a minimum, that the "students facing suspension . . . be given *some* kind of notice and afforded *some* kind of hearing." *Goss*, 419 U.S. at 579. However, the "timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." *Id.* Consequently, due process is a flexible concept "call[ing] for such procedural protections as the situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). With these principles as guides, the Court considers Plaintiff's procedural due process challenges.

### B.     This Court's Prior Order (# 16)

As noted above, the Court ordered UNSOM to follow specific procedures during Plaintiff's rehearing. (# 16, 8-9.) Based on the rehearing record (# 27-1, Ex. 4), pleadings on file, and oral argument, the Court finds that UNSOM followed the Court's required procedures. UNSOM gave Plaintiff sufficient notice with the specific allegations and potential punishment. Plaintiff testified on his own behalf, had counsel present, refuted UNSOM's statistical analysis, and even provided his own "expert." Indeed, the Court's Order implemented procedures above those generally required by courts. The record indicates that UNSOM complied with the "letter of the Court's Order." Plaintiff argues, however, that UNSOM merely "went through the steps" and had already made up its mind concerning

Plaintiff's case. Specifically, Plaintiff alleges the procedure, even if compliant with the Court's Order, was tainted through bias and fundamental unfairness.

### C. Plaintiff's Specific Procedural Due Process Allegations

Although Plaintiff resorts to a "shotgun" approach in his motion, most of Plaintiff's allegations relate to the SDC's partiality in the rehearing procedures.

#### 1. The SDC's Bias and Impartiality

Courts have held that an "impartial decision-maker is an essential guarantee of due process." *Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975). Courts begin "with a presumption that decision-makers are honest and impartial." *See, e.g., Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1124 (8th Cir. 2005) (citations omitted). In addition, "in a school disciplinary context, the level of impartiality required for the decision maker does not reach the absolute neutrality required in the criminal justice system." *Id.* (citing *Riggan v. Midland Indep. Sch. Dist.*, 86 F. Supp. 2d 647, 656 (W.D. Tex. 2000)). Further, "alleged prejudice of university hearing bodies must be based on more than mere speculation and tenuous inferences." *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 15 (1st Cir. 1988). Plaintiff argues the SDC was unfairly prejudiced at the rehearing because (1) Dr. Hug-English ("Hug") acted as prosecutor, witness, and committee member; (2) the SDC participated in the prior hearing; (3) some witnesses referred to Plaintiff's alleged attempts to violate the Court Order; and (4) the Chair departed to attend his father's funeral.

##### i. *The "Multiple Hat" Argument*

When a student receives a formal hearing and is represented by counsel, courts have held that a school board member or other individual may prosecute the case, rule on

Page 9 of 15

evidentiary questions, and advise the hearing body as to possible action. *See, e.g., Jennings*, 397 F.3d at 1124-26; *see also Gorman*, 837 F.2d at 15 (stating that an individual playing "multiple roles and multiple hats" is not a per se due process violation); *Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985) (holding that a "school administrator involved in the initiation and investigation of charges is not thereby disqualified from conducting a hearing on the charges"). While Hug did act as prosecutor, chief witness, and committee member, she was a non-voting member and did not participate in the deliberations. Because she did not actually deliberate on Plaintiff's suspension, her participation did not violate due process. *See, e.g., L.Q.A. v. Eberhart*, 920 F. Supp. 1208, 1220-1221 (M.D. Ala. 1996) (holding that an individual involved in multiple roles did not violate due process because he "did not deliberate on the plaintiff's expulsion"). The Court rules that Hug's multiple roles did not violate Plaintiff's procedural due process.

      ii.  *The SDC's Prior Involvement*

  Plaintiff also argues the rehearing violated his due process rights because committee members who had previously sat in the first hearing also participated in the rehearing. In "the intimate setting of a college or university, prior contact between the parties is likely, and does not *per se* indicate bias or partiality." *Gorman*, 837 F.2d at 15. Courts have further stated that in the school context, "it is both impossible and undesirable for administrators involved in incidents of misbehavior always to be precluded from acting as decision-makers." *C.B. v. Driscoll*, 82 F.3d 383, 387 n.3 (11th Cir. 1996). Thus, to establish that the committee's prior participation violated his constitutional rights, Plaintiff must show actual bias or partiality, not the appearance of such. Plaintiff simply alleges "it is fundamentally unfair that the same

committee members/jurors who had previously decided" the hearing participated in the rehearing. Although this participation may give the appearance of partiality, Plaintiff has not made any specific allegations to support his conclusion. While the SDC's prior involvement may have been unconstitutional if this were a criminal setting, the record does not reveal bias or prejudice to the level required in the school context to indicate that the SDC's independence was compromised to an extent the hearings violated Plaintiff's due process rights. Accordingly, the Court dismisses this argument.

### iii. Reference to Plaintiff's Other "Bad Acts"

Plaintiff also claims Hug's accusation that Plaintiff violated the Court's Order, and references to other incidents of cheating during the rehearing rendered the process fundamentally unfair. In *Nash v. Auburn Univ.*, the court held that testimony concerning the student's general conduct and other bad acts did not prejudice the decision-making body. 812 F.3d 655, 665-66 (11th Cir. 1987). These references did not violate due process because they tended to prove motive, opportunity, and intent. *Id.* In addition, as discussed above, Hug was acting as prosecutor. Hug presented evidence against Plaintiff, and Plaintiff had the opportunity to refute. Based on the foregoing, the Court rejects this argument.

### iv. The Chair's Departure

Plaintiff further argues that the Committee Chair's early departure to attend his father's funeral biased the "jury" and prejudiced his case. Although the Chair did leave early, he appointed another individual to act in his place, and thus a quorum was still present. In addition, the record does not indicate that this departure unfairly prejudiced Plaintiff's case.

### 2. Witnesses' Refusal to Hand Over Notes

In addition to his impartiality arguments, Plaintiff states that two witnesses on the stand read from prepared notes. When Plaintiff requested to either receive a copy of the notes or have them entered into the record, the witnesses and UNSOM's counsel refused. Plaintiff argues this refusal violated his due process rights. Plaintiff implies that because the testimony was similar, the witnesses must have somehow colluded and prepared their testimony together. UNSOM claims the testimony was similar because it related to a meeting both witnesses attended. Plaintiff had opportunity to question the witnesses. A suspension hearing does not require the level of due process afforded in a criminal hearing. The opportunity to question the witnesses regarding their testimony is sufficient for these proceedings.

### 3. Babysitter Incident

Plaintiff also claims that one committee member's participation was unfair because she was preoccupied with securing her babysitter's services for longer than expected. This argument lacks merit. Although the individual did state she was worried about the time, the committee took a break to allow her to call and make arrangements. After calling and securing the babysitting services for an extended period, she stated that no problem existed. Plaintiff has not demonstrated this incident unfairly prejudiced his case.

### 4. The Two Committee Members' Absences

Plaintiff also argues that two committee members' absence during the rehearing unfairly prejudiced his case and violated his due process rights. Two SDC members participated from Las Vegas by video conference. When UNSOM finished its presentation, the Chair realized that the two Las Vegas members had left the hearing. The Chair then

stopped the proceedings until the two individuals could be found. Apparently, the missing members were meeting with patients during their absence. Although the maximum time they could have been absent was approximately one hour, the record does not indicate how long they were absent. After their return, the Chair did not read back to them the record. UNSOM claims that because they did not miss Plaintiff's presentation, that even if their absence was error, it did not prejudice Plaintiff's case.

"The fundamental requirement of due process is the opportunity to be heard." *Goss v. Lopez*, 419 U.S. 565, 579 (1975). UNSOM argues that Plaintiff had this opportunity in spite of the members' absence because they were present during his testimony and presentations. Plaintiff argues that because these individuals missed UNSOM's presentation they could not properly weigh all the evidence.

As noted earlier, the two missing members participated in the first hearing and thus knew UNSOM's arguments. In addition, in its prior Order (# 16), the Court ordered UNSOM to implement the following procedures:

> Specifically, Defendants should give Shenoy written notice of the potential action to be taken against him—such as suspension or expulsion—in order that he may adequately understand the gravity and defend against the allegations. Such notice must be given at least ten (10) days in advance, and must contain, at a minimum, a brief summary of any evidence to be presented against him before the Student Development Committee or Dean. Plaintiff must be allowed access to testimony of witnesses or others if such testimony is to be relied upon by the Committee, or, at a minimum, Plaintiff must be given notice of the names of the students who accused him of cheating if the Committee is to rely upon or hear evidence regarding such accusations. If student accusers' statements are heard/relied upon by the Committee, Plaintiff should be allowed the opportunity to examine the student accusers before the Committee. Plaintiff must also be given the opportunity to testify on his own behalf before the Committee, and Plaintiff must be offered the opportunity to examine the statistical analysis and scantron results of the other students in the classes, and must be given the opportunity to put on

  counter statistical evidence or explanation regarding the statistical evidence of the exams in question.

The members' absence did not affect the above procedures. Plaintiff still enjoyed all the safeguards mentioned in the Court's Order. Court decisions discussing the necessary due process for a suspension focus on the student's right to present his defense against the charges, to provide testimony, and to inspect the evidence against him. *See, e.g., Flaim v. Medical College of Ohio*, 418 F.3d 629, 635-38 (8th Cir. 2005). Even cases dealing with permanent expulsion have held these safeguards are sufficient. *Id.*

  Plaintiff argues that because he conducted cross on some of the witnesses prior to his presentation, the committee members may have missed this questioning and other evidence Plaintiff presented during UNSOM's case. However, the safeguards imposed in the Court's Order diminished the possibility that SDC made an erroneous decision. Even though two members missed part of UNSOM's presentation, Plaintiff still had the opportunity to present his defenses, refute evidence, question witnesses, and be heard. Therefore, the procedures fulfilled the "rudimentary elements of fair play." *See, Dixon v. Alabama State Board of Educ.*, 294 F.2d 150, 158-59 (5th Cir. 1961) (stating that in an expulsion hearing, fair play requires that an individual have the opportunity to present his defenses, his testimony, and to inspect the evidence against him). Because UNSOM conducted the rehearing in accordance with this Court's prior order and otherwise afforded Plaintiff sufficient process, the Court also rejects this argument.

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Emergency Motion to Extend Preliminary Injunction (# 27) is *denied*.

DATED this 20th day of October, 2006.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE